UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-502-FDW
(3:13-cr-20-FDW-DSC-1)

| | |
|---|---|
| PEDRO OSCAR DIEGUEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I. BACKGROUND

Petitioner was charged in the underlying criminal case with: Count (1), conspiracy to distribute and possess with intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine (21 U.S.C. §§ 846, 841(b)(1)(A)); Count (2), conspiracy to commit money laundering (18 U.S.C. § 1956(h)); and Count (3), using and carrying one or more firearms in furtherance of a drug trafficking crime, that is, conspiracy to distribute and possess with intent to distribute cocaine as charged in Count (1) (18 U.S.C. § 924(c)). (3:13-cr-20 ("CR") Doc. No. 44).

The following transpired on the first day of trial:

THE COURT: What was the best offer extended by the United States.
…

MR. KAUFMAN: Well, in general terms the offer was to drop both the drug trafficking conspiracy charge in One and the firearm charge in Three. He would plead only to the money laundering – … Money Laundering Conspiracy which had no mandatory minimum and a cap and there would have been substantial assistance

1

language in it, which we would have been happy to invoke. But those are the general terms. We had some specifics about specific offense characteristics and such, but I don't know that we need to go down that road.

THE COURT: Now let me ask the Defendant.

**Sir, was that offer directly extended to you, personally, either by the United States or by Mr. Hewitt – through Mr. Hewitt**.

THE DEFENDANT: **Through Mr. Hewitt**.

THE COURT: It was.

THE DEFENDANT: Cap at 20.

THE COURT: Cap at 20, meaning that the money laundering conspiracy you couldn't receive more than 20 years, although the – was there any estimate as to the laundered amount, so you would have a Guideline range.
…

MR. KAUFMAN: …. There was a time when we were going to leave the base offense level, based on the drugs, open to 32 to 38. But – and so that's why I don't know if the best offer. But the last offer was to nail it down and say that the reason – that the equivalent was a level 34 for the drug amount, 50 to 150 kilograms. Because of the way 2S1.1 works, it would be the cross reference.

THE COURT: That would be in the 5 to 40 range or 10 to life?

MR. KAUFMAN: No, that's the thing. It would still be zero to 20.
…

THE COURT: All right. So, I know, sir, that you're certainly not an expert in sentencing guidelines, but did you understand, generally, what Mr. Kaufman said with regard to the offer – the last offer made by the Government?

THE DEFENDANT: Yeah, 20 years, yeah.

THE COURT: So you understood that you were – if you had taken the best offer they ever made, which was to plead to Count Two, the Money Laundering Conspiracy, your sentence was capped at 20 years and probable would have been less than that – maybe we aren't sure. But it would have been capped at 20 years.

THE DEFENDANT: Cap at 20 years. Lose the property that her family have for generations.

THE COURT: Okay.

THE DEFENDANT: I was an officer in the Navy and they put me in 22 –

MR. HEWITT: There was a forfeiture provision in that –

THE COURT: Right. So the forfeiture provision was material to your discussion of a plea.
....

MR. KAUFMAN: Your Honor, the house was not at issue. We were not going to take the house.

    Your Honor, let me explain, if I can. I've had these discussions with Mr. Kaufman. I think there were at least four written plea offers, all of which I transmitted to Mr. Dieguez in jail, discussed them with him. **The hanging point – well, one of the hanging points is simply he said he's not guilty.** That's the major hanging point.
…

    **The second was, the maximum, even with the money laundering so called best offer had a 20-year cap exposure. And Mr. Dieguez, in my discussions with him, was not willing to accept that either. But primarily he has told me from the very beginning, through all of the discussions of plea, all of the plea agreements I've given him, which have been about four or five, that he is simply not guilty of any of this and was not going to plead guilty.**

THE COURT: **All right. Mr. Dieguez, is what Mr. Hewitt say correct?**

THE DEFENDANT: **That's correct, yes.**

THE COURT: **You personally made the decision never to plead guilty because you are asserting that you are innocent.**

THE DEFENDANT: **Yes, sir.**

THE COURT: **Even the best possible deal of a cap of 20 years, you were not going to entertain because you are asserting your innocence.**

THE DEFENDANT: **Yes, sir**. Can I say something?

THE COURT: Yeah.

MR. HEWITT: Go ahead, sure.

THE DEFENDANT: Even Mr. Kaufman send me a message say, if I no sign, he going to bring my wife in the case. Even with that, I say no, sir. He offer me 35 to

3

Case 3:13-cr-00020-FDW-DSC   Document 207   Filed 06/30/20   Page 3 of 11

life. I come to this country to be free, not to somebody try to point to me to something I no did. If you see my place, I know was present –

MR. HEWITT: You don't say anymore.

THE COURT: You've disclosed on the record enough for this Court to feel very confident that you were told the best possible offers of the United States, and including one which I'm presuming Mr. Kaufman made in good faith, meaning that he had probable cause to proceed against your wife. And that which he can say is part of a global deal that the government would consider not charging someone when they possibly could

But whether he – whether Mr. Kaufman made that offer or not, he's standing up which implies to me he wants to dispute that. You understood that was something you personally decided not to accept. That is, some promise from Mr. Kaufman to keep your wife out of it or some – I don't want to say threat, but some recognition that there was probable cause for the Government to seek an indictment against your wife.

MR. KAUFMAN: If I may, Your Honor.

THE COURT: Yes.

MR. KAUFMAN: There was no global plea resolution. In fact, I made it very clear that there was no guarantee what we would or would not do, whether Mr. Dieguez pled guilty or did not plead guilty. I did a reverse proffer with Mr. Dieguez.

THE COURT: Okay.

MR. KAUFMAN: So we really flushed out these issues. And in full candor, you know, the Defendant's wife is still in a target status.

THE COURT: Right.
…

MR. KAUFMAN: [W]e're not threatening to do something against a spouse depending on what he would do. That was not something we said, If you go to trial we're going to charge her. And we never said, If you don't go to trial we wouldn't charge her.

THE COURT: All right.

MR. KAUFMAN: It's just, you know, I left that to defense counsel to advise as to what likely would happen.

MR. HEWITT: And I did.

> THE COURT: That's all I need to hear, Mr. Dieguez…. **Everything that Mr. Hewitt and Mr. Kaufman have said, do you agree is an accurate summary of what has been relayed to you?**
>
> ...
>
> THE DEFENDANT: **Yes, sir. Yes, sir.**
>
> THE COURT: Thank you. **So the Court finds as a matter of fact that the Defendant knowingly, voluntarily, and intelligently, made a decision not to enter or accept any of the plea offers extended by the United States, primarily because he asserts his innocence, and also because he didn't think – he didn't agree with the deals. But he made the decision, and that's what's critical. And the Court finds that he made those decisions**.

(CR Doc. No. 177 at 77-84) (emphasis added).

A jury found Petitioner guilty of Counts (1) and (2) but not guilty of Count (3). (CR Doc. No. 112).

The Presentence Investigation Report ("PSR") scored the offense level based on the money laundering conspiracy because it has the greater of the adjusted offense levels of 48. (CR Doc. No. 148 at ¶ 33). However, the total offense level exceeds 43 so the offense level is treated as 43 pursuant to United States Sentencing Guideline Chapter 5, Part A, comment n.2. (CR Doc. No. 148 at ¶ 36). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. 148 at ¶ 41). The resulting guideline imprisonment range was life. (CR Doc. No. 148 at ¶ 59).

In a Judgment entered on January 6, 2015, the Court sentenced Petitioner below the advisory guideline range to 400 months' imprisonment for Count (1) and 240 months for Count (2), concurrent, followed by a total of five years of supervised release. (CR Doc. No. 161); see (CR Doc. No. 162) (Statement of Reasons).

Petitioner argued on direct appeal that: the jury was confused by unrelated and unreliable testimony regarding the various drug transactions involved in his conspiracy; the Court erred by

5

failing to *sua sponte* instruct the jury regarding single versus multiple conspiracies; the Court improperly allowed the Government to question his two cooperating co-defendants about who was involved in the conspiracy; the Court erred by applying sentencing enhancements for role and firearm possession; and the sentence is procedurally unreasonable due to sentencing disparities. The Fourth Circuit Court of Appeals affirmed, United States v. Dieguez, 633 F. App'x 106 (4th Cir. 2015), and the Supreme Court denied certiorari on October 3, 2016, Dieguez v. United States, 137 S.Ct. 245 (2016).

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on August 14, 2017.[1] He argues that counsel was ineffective for depriving Petitioner of the right to accept the Government's plea offer and insisting he go to trial. The Government opposes the § 2255 Motion to Vacate because Petitioner's claim is conclusively refuted by the record. (Doc. No. 3). In his Reply, Petitioner contends that the discussions in which counsel persuaded Petitioner not to accept the 20-year plea offer were subject to attorney-client privilege and did not take place on the record, and that Petitioner's decision to reject the offer was not knowing, intelligent, and voluntary. (Doc. No. 4).

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

6

The Rules Governing Section 2255 Proceedings provide that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. Rule 4(b), 28 U.S.C. foll. § 2255. After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved based on the record and governing case law and that no evidentiary hearing is warranted. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the

7

Case 3:13-cr-00020-FDW-DSC   Document 207   Filed 06/30/20   Page 7 of 11

prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under … Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated in part on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Frye, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability he would have accepted the earlier plea offer had he been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

Petitioner alleges that the Government offered a plea agreement that would require Petitioner to plead guilty only to the money laundering charge which is punishable by 0 to 20 years' imprisonment. See (Doc. No. 1-1 at 28) (proposed plea agreement). Petitioner alleges that he told counsel that he wanted to sign this plea agreement, but counsel "adamantly told [Petitioner] that he was not going to let him sign the plea agreement because the money laundering count concerning drug trafficking would subject him to a Base Offense Level of 38, starting out, and that would be enhanced further with all the other enhancements listed in the plea agreement to a maximum sentence." (Id.). Counsel therefore "stipulated to [Petitioner] that he was going to go to trial in light of the evidence." (Id.); see (Doc. No. 1-1 at 41) (Petitioner's affidavit). Petitioner claims that, as a result of counsel's advice, Petitioner was convicted of Counts (1) and (2) and was sentenced to 400 months' imprisonment. (Doc. No. 1-1 at 11). Petitioner claims that counsel failed to inform him of the consequences of going to trial on all three Counts and that he faced the possibility of life imprisonment if convicted. (Doc. No. 1-1 at 12). The 400 month sentence Petitioner received was 13 years greater than the maximum sentence he would have received had he accepted the plea agreement, and subjected his wife to possible prosecution. Counsel's advice to go to trial rather than approving Petitioner's acceptance of the plea agreement was unreasonable in light of the Government's overwhelming evidence and the lack of a viable defense. Petitioner asserts that he would have signed the plea agreement, and it would have been accepted by the Court, but for counsel's deficient advice. (Doc. No. 1-1 at 22, 42).

This claim is conclusively refuted by the record. Petitioner stated in open court that counsel informed him of the Government's plea offer for the money laundering conspiracy charge that was capped at a 20 year sentence, but that he was unwilling to accept the offer because Petitioner maintained his innocence. (CR Doc. No.177 at 77-84). Petitioner's present self-serving claims

9

that counsel failed to adequately consult with him about the plea offer and prohibited him from accepting that offer, and that Petitioner would have accepted the offer had counsel provided adequate advice, are conclusively refuted by his own statements in open court and will be denied. See generally Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Even if counsel had somehow performed deficiently in communicating the plea offer to Petitioner, the record reflects that any such deficiency did not prejudice Petitioner because he was unwilling to plead guilty to the money laundering conspiracy because he maintained his innocence and because he was unwilling to expose himself to a sentence of up to 20 years in prison.

Based on the foregoing, this claim is conclusively refuted by the record and will be denied.

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: June 30, 2020

Frank D. Whitney
United States District Judge